St. Louis, Iron Mountain & Southern Railway Company *v.* Middleton.

Opinion delivered December 14, 1914.

1. Appeal and error—submission of issues—prejudice—reversal—negligence.—Where the trial court submitted to the jury for consideration all of the alleged acts of negligence of defendant in a personal injury action, if it be found that testimony was wanting with respect to any one of said acts, then the court will be held to have committed prejudicial error, calling for a reversal of the case.

2. Master and servant—injury to servant—assumption of risk.—In an action for damages for personal injuries, the evidence held insufficient to show that the master was guilty of negligence in not supplying plaintiff, who was a skilled machinist, and familiar with the work he was doing, with sufficient help to do his work, and as plaintiff knew that in performing certain parts of the work that he would require assistance, and when plaintiff undertook to do the work without calling assistance, he will be held to have assumed the risk of the same.

3. Master and servant—injury to servant—obvious defects.—A machinist is not bound to inspect for defects a lathe, at which he is put to work, but is only held to ordinary care to take notice of obvious dangers.

4. Master and servant—injury to servant—defective machinery—inspection.—Where portions of a lathe at which a skilled workman is put to work, are defective, and he is injured thereby, it is a question for the jury to determine whether he was guilty of contributory negligence in proceeding with his work without discovering the condition of the machine, or whether he assumed the risk by proceeding with his work after he discovered its condition.

Appeal from Lonoke Circuit Court; *Eugene Lankford,* Judge; reversed.

*E. B. Kinsworthy, R. E. Wiley* and *T. D. Crawford,* for appellant.

1. There was no negligence on the part of the company or its foreman; the employee assumed the risk; 3 Labatt, Master and Servant, § 1166; 53 Am. St. 127; 108 Minn. 199; 25 L. R. A. (N. S.) 362; 158 Ind. 634; 92 Ga. 77; 167 Ill. 156; 97 Ark. 486; 68 *Id.* 316; 160 Fed. 887. See, also, 144 Ky. 465; 184 Mass. 274; 106 S. W. 865; 147 U. S. 238; 54 Ark. 389, etc.,

*Manning, Emerson & Morris,* for appellee.

1. This case arose under the Federal Act. 106 Ark. 421.

2. There was negligence in failing to furnish sufficient help, and in furnishing defective machinery. 116 U. S. 642; *Ry. Co.* v. *Hall,* U. S. Sup. Ct., January 5, 1914; 229 U. S. 114.

3. There was no assumed risk. 48 Ark. 334; 91 *Id.* 102; 92 *Id.* 350; 88 *Id.* 548; 99 *Id.* 265; 170 U. S. 665; 93 Ark. 564; 95 *Id.* 588; 98 *Id.* 145-240-8; 101 *Id.* 197; 104 *Id.* 506; 103 *Id.* 61-509; 107 *Id.* 118; 105 *Id.* 319, 434-7; 107 *Id.* 476; 109 *Id.* 288; 116 U. S. 642.

4. Every principle necessary to affirm this case is settled in 91 S. W. 561; 113 S. W. 86; 125 S. W. 276.

McCulloch, C. J. This is an action against the railway company to recover damages for personal injuries alleged to have been sustained by plaintiff's intestate while working in the shops of defendant in Argenta. Deceased, William Middleton, was a machinist, and while working at one of the machines in the shop, handling a heavy metal appliance of a locomotive engine which he was repairing, it fell on his hand and mashed the flesh from one of his fingers. Blood poisoning resulted from the injury and the injured man died from the effects. The piece of machinery he was working on was a part of an engine used by the railway company in interstate commerce and the action is based upon the Federal

statute which provides for compensation for employees of common carriers who are injured while engaged in interstate commerce. Appellant concedes that under the facts of the case the deceased was employed in interstate commerce, and that if there is any liability at all it falls within the terms of the Federal, statute.

Deceased was an experienced machinist, having served an apprenticeship of several years, and when he received his injury had been working in the shops as a fully equipped machinist for six or eight months. He worked under a foreman of the department named Harris and was accustomed to working at any machine to which he was assigned. He had worked at the particular machine where he was injured several times before this occasion. The machine he was working at was a thirty-six inch turning lathe, and he was engaged in boring a heavy metal appliance called the rod brass of an engine. The appliance weighed from 100 to 125 pounds and was placed in the lathe for the purpose of boring a hole in it to fit the pin, and facing off the side. It was held in place in the lathe by three jaws, which were tightened up by means of a screw and nut. The job was what was termed a rush order, which we understand to mean that it was work to be done not necessarily with special haste but that it was to have precedence over other work. Another man was on the job and had placed the brass in the lathe, when he was called off and Middleton was assigned to complete the job. He went to work at it and worked there for a period of time, when he completed one side of it, and it became necessary to loosen up the jaws, remove the brass from the lathe, and turn it round and put it back in the lathe so as to face the other side. He removed it from the lathe and while attempting to put it back, after having turned it round, it slipped out of the jaws and when it fell to the platform on which the machine rested it struck one of his fingers and mashed off some of the flesh. The only witness who stood near Middleton and was able to describe the way in which the injury occurred, says that Middleton had taken out the

brass and turned it around and put it back in position, and was holding it there in place with one hand while attempting to screw down the nut so as to tighten the jaws with his other hand, and the brass appeared to slip out of the jaws and fall.

There are three allegations of negligence in the complaint; one that the employer failed to furnish sufficient helpers to the mechanics, and particularly that no helper was furnished to Middleton to aid him in handling the brass; next, that the jaws of the lathe were permitted to become worn smooth so that they would not hold the piece of brass, but would allow the same to slip out; and third, that shavings of dirt were allowed to accumulate around the screw with which the jaws of the lathe were tightened, so that when Middleton attempted to screw down the nut it would not work and tighten the jaws, and that Middleton was thus misled into believing that the nut had gone down far enough to tighten the jaws, whereas it had been retarded and stopped by the dirt and metal shavings around the screw. The plaintiff was awarded damages by the verdict of the jury, and the defendant has appealed. The case was submitted to the jury on an instruction with respect to the acts of negligence named in the complaint in failing to furnish sufficient help, and also in failing to exercise care in furnishing a safe place to work, in that the jaws were allowed to get smooth and out of repair, and that the shavings and dirt were allowed to accumulate around the screw.

(1)   It is insisted by counsel for defendant that according to the undisputed evidence there was no negligence of the employer in any of the particulars named, and that even if there was, Middleton assumed the risk of the danger. Inasmuch as the court, over the objection of the appellant, submitted to the jury for consideration all of the alleged acts of negligence, if it be found that testimony was wanting with respect to any of them then the error of the court was prejudicial and calls for a reversal of the case, for we have no means of determin-

ing which one of the acts of negligence the verdict of the jury was based upon.

(2)   After a careful analysis of the testimony in the case, we are of the opinion that there was no evidence to warrant a submission of the alleged act of negligence of the employer in failing to furnish a helper, and that the court erred in submitting that issue to the jury. We are also of the opinion that even if there had been evidence on that issue, the deceased assumed the risk of the danger and can not recover. The testimony is conflicting as to the number of helpers furnished in that department, and whether the number furnished was sufficient, but we do not regard that point as material. In doing the work assigned to him on this particular occasion, Middleton did not need help except when it came time for him to shift the brass piece in the lathe. He worked on it for a considerable time, boring the hole for the pin and facing the surface of the brass, and when it became necessary to change it he needed help to lift it out of the lathe and put it back. It was not necessary nor, according to the testimony, was it usual, for a helper to stand in waiting when not needed, and from this state of facts it necessarily follows that it was the duty of Middleton to seek help or call on his foreman for it when he needed it. The testimony disclosed no competent evidence to establish the fact that he called on the foreman for any help. The only testimony on the subject is that of two witnesses, one of whom was a brother of Middleton, who was also a machinist in the shop; and these witnesses testified, over the objection of defendant's counsel, that Middleton spoke to his brother about needing help and that his brother told him to go to see Harris, the foreman, about it, and that they (the witnesses) saw him go over to Harris in another part of the room, but they could not hear what was said between the two. Harris denied that deceased had any conversation with him at all about help. The plaintiff sought to discredit the testimony of Harris by showing contradictory statements, but if it be conceded that Harris' testimony was so discredited that the

jury had the right to disregard it, the record is still left
without any affirmative testimony to the effect that de-
ceased ever called upon Harris for help or communi-
cated to him the necessity for the services of a helper at
that time.   It is purely a matter of conjecture, too vague
to base a verdict upon, that deceased, when he went
across the room, made request of Harris for help.
If the statements of deceased to his brother are admis-
sible for any purpose, they are certainly not admissible
to establish the independent fact that he called upon
Harris for help.   In addition to that, we are, as before
stated, convinced that under the law if deceased called
upon Harris for help, which was denied, he assumed the
risk by proceeding with the work of lifting the metal
piece out of the lathe.   It must be remembered that he
was a skilled workman and had worked several times at
this particular machine. He knew the weight of the metal
piece and he knew his own strength and capacity for
handling it.   Those matters were entirely within his
own knowledge, more so than within the knowledge of
the foreman.   He was not, according to the testimony,
compelled to proceed with his work, but had the right to
wait for a helper when he needed one.   Therefore, if he
was refused help and proceeded with the work of at-
tempting to handle the heavy piece of metal without
help, he assumed the risk himself and could not complain.
That he appreciated the danger of handling the heavy
piece of metal by his own effort, and without help, is too
plain for controversy.   This, of course, leaves out of the
question the act of negligence of the master in permitting
the lathe to get out of repair and become unfit for reason-
ably safe use in doing that work. Of course, if there was
negligence in that respect, it presents another phase of
the case upon which a recovery may be based.   But so far
as the mere failure to furnish help in lifting the piece
out of the lathe, deceased assumed the risk by attempt-
ing to proceed without the assistance of a helper.   This
is so because, as we have already said, he was a skilled
machinist, was fully advised as to the size and weight

of the piece to be removed, and knew of his own strength and capacity to handle it.

(3-4)    So far as the issue concerning the alleged act of negligence of the master in allowing the jaws of the lathe to become smooth so that the heavy piece of metal was likely to slip while the screws were being drawn, we think there was sufficient evidence to warrant a submission to the jury, both as to the act of negligence and the question as to assumption of risk. Witnesses testified that the jaws were made with a rough surface, having ridges so that heavy pieces of metal would not slip while being put into the lathe or taken out, and that the jaws had become smooth. Middleton and the other machinists were shifted about frequently from one machine to another and it was not the duty of each of them to see that every machine in the shop, or any one of them so far as that is concerned, was kept in repair. As a matter of fact, the testimony shows that Middleton did not work regularly at this machine, but that there was another man who worked regularly there, Middleton only being substituted occasionally. When he was called to finish up the job at this machine, the piece of metal was already in the lathe and he had no opportunity at that time to discover whether or not the jaws of the lathe were in reasonably safe condition. It is true he might have examined and discovered the condition when he lifted the piece out of the lathe, but he was not bound to inspect the machine, but was only held to ordinary care to take notice of obvious dangers. And it was a question for the jury to determine whether he was guilty of contributory negligence in proceeding with his work without discovering the condition of the jaws, or whether he assumed the risk by proceeding after he discovered their condition. We can not say as a matter of law that the danger from proceeding with the work was so obvious that Middleton is deemed to have assumed the risk even if he did observe the condition of the appliance. We are of the opinion, therefore, that that question presents an issue for submission to the jury.

It is not so clear that the allegation of negligence with respect to allowing to become clogged the screws which were used in tightening the jaws of the lathe is supported by evidence sufficient to warrant its submission to the jury. There is sufficient evidence, it is true, that the screws were clogged up with metal shavings which probably prevented the tightening of the jaws, but it appears from the testimony of witnesses, as we interpret it, that it is the duty of the machinist while operating the machine to see to freeing the screws from such obstacles, inasmuch as the screws were liable to be clogged up at any time by the shavings falling from the metal as the work proceeded. The testimony is that it was customary to strike the lathe heavily with a hammer from time to time so as to jar the shavings out, and cause them to fall from around the screws. Now, if it be true, as that testimony tends to show, that it was the duty of Middleton himself to see that the screws were kept free from such obstacles, then it follows that an act of negligence on the part of the master or fellow-servant can not be predicated upon the presence of such obstacles around the screws. These observations concerning this branch of the case are thrown out for guidance in another trial of the case when this branch of it may be more clearly and definitely explained in the testimony.

For the error of the court in submitting the issue of negligence of the defendant's foreman in failing to furnish a helper, the judgment is reversed and the cause is remanded for a new trial.